GINO'S PIZZA OF EAST HARTFORD, INC. *v.*
GEORGE B. KAPLAN ET AL.
(12075)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued March 3—decision released May 8, 1984

*Wayne C. Gerlt,* with whom, on the brief, was *Paul W. Smith,* for the appellant (third party defendant Camarco Family Bake Shop, Inc.).

*Philip L. Steele,* for the appellee (named defendant and third party plaintiff).

*David R. Lynch,* for the appellee (plaintiff).

PARSKEY, J. This action involves a dispute between two tenants in a small shopping plaza in East Hartford. On January 12, 1979, Camarco Family Bake Shop, Inc. (Camarco) entered into a lease agreement with George B. Kaplan, d/b/a Sutton Realty Co. (Kaplan). Section 8.1 of that lease provides that "[t]he Demised Premises shall only be used for the purposes of operating a bakery." On January 1, 1981, Gino's Pizza of East Hartford, Inc. (Gino's) entered into a lease agreement with Kaplan.[1] Article VIII of that lease provides that the "[l]andlord shall not permit any other restaurants within the Complex." Gino's does not serve breakfast and opens at 11 a.m. Since April of 1979 Camarco has operated a sit down breakfast counter. In early 1981 it added some tables and chairs. When a grill it had

---

[1] Gino's predated Camarco at this shopping complex. The January 1, 1981 lease between Gino's and Kaplan was their second lease agreement. There is no evidence that the first lease contained a restrictive covenant.

installed became operative in early 1982, Camarco expanded its menu from coffee and other beverages and items baked on the premises to include eggs, sausage and bacon which it served from 6 a.m. until noon.

At Gino's request, on August 25 and December 8, 1981, Kaplan wrote to Camarco informing it that the installation of a grill was a violation of its lease and demanding that it cease operating as a restaurant. When Camarco refused, Gino's instituted this suit against Kaplan seeking specific performance of the restrictive covenant and a mandatory injunction directing Kaplan to enforce the lease. In response Kaplan filed a third party complaint against Camarco alleging a violation of their lease and requesting a permanent injunction prohibiting Camarco from operating as a restaurant, indemnification for any judgment in favor of Gino's, damages, costs, expenses and attorneys' fees including attorneys' fees for having to defend against Gino's.

The trial court, *Hale, J.*, ordered specific performance by Kaplan of article VIII of the Gino's lease, issued an injunction ordering Kaplan to take action to prevent Camarco from operating as a restaurant, and ordered Kaplan to pay all of Gino's legal costs and $1450 in attorneys' fees. The court then ordered specific performance by Camarco of § 8.1 of its lease, issued an injunction prohibiting Camarco from using a grill to provide breakfast or otherwise operating as a restaurant,[2] and ordered Camarco to pay Kaplan's attorneys' fees and to indemnify Kaplan for the judgment in favor of Gino's. Kaplan did not appeal. Camarco has appealed claiming that it did not violate its lease, that the court failed to consider the harm to

---

[2] The court allowed Camarco to serve coffee and goods baked on the premises, excluding chicken pot pies.

Camarco and to weigh the equities before issuing the injunction, and that the award of attorneys' fees was improper.[3]

Camarco contends that it did not violate its lease with Kaplan because the lease was rendered ambiguous by Kaplan's alleged acquiescence in the operation of the breakfast counter. Camarco submits that it was thus reasonable for it to interpret the lease to permit its breakfast operation as part of its bakery business. Camarco urges us to resolve this ambiguity against Kaplan as the drafter of the contract. See, e.g., *Simses v. North American Co. for Life and Health Ins.*, 175 Conn. 77, 85, 394 A.2d 710 (1978).

The trial court did not find an ambiguity in this lease and neither can we. "[C]ontractual terms are to be given their ordinary meaning and when the intention conveyed is clear and unambiguous, there is no room for construction." *Southern New England Contracting*

___

[3] Camarco raises two other claims that need not detain us. First, Camarco claims that it should not be bound by the restrictive covenant in the Gino's-Kaplan lease because that lease was entered into subsequent to its lease. Camarco misconstrues the court's judgment. The court found that Kaplan, by not preventing Camarco from running a restaurant, violated the restrictive covenant of the Gino's-Kaplan lease and that Camarco, by serving breakfast, violated the restrictive covenant of its lease with Kaplan.

Second, as a special defense Camarco pleaded that Kaplan and Gino's acquiesced in the installation of the grill. The court did not expressly rule on this defense and Camarco does not assign this as error. Instead it contends that assuming arguendo that its activity was in violation of its lease, because Kaplan acquiesced in this conduct "the restrictive anti-competition covenant should not operate to prohibit the operation of Camarco's breakfast counter." Again, Camarco has misread the judgment. The court enjoined the use of the grill "or otherwise operating a restaurant." It did not enjoin the use of the breakfast counter or the service of coffee until 11 a.m. together with the consumption on the premises of bakery products. Moreover, even if we were to construe Camarco's claim to be a challenge to that part of the injunction that prohibits the use of the grill, there is nothing in the record to support the defense that Kaplan or Gino's acquiesced in the use or installation of the grill. To the contrary, the record reveals immediate and continued objection by both parties to this action.

*Co.* v. *Norwich Roman Catholic Diocesan Corporation,* 175 Conn. 197, 199, 397 A.2d 108 (1978). The lease clearly restricts Camarco to operating only a bakery, which by no stretch of the imagination includes operating a grill and serving breakfast.

Camarco next claims that the trial court erred in issuing the injunction because, by excluding evidence about the cost of the installation of the grill, the court failed to weigh the equities. We do not agree.

When presented with a violation of a restrictive covenant, the court is obligated to enforce the covenant unless the defendant can show that enforcement would be inequitable. *Hartford Electric Light Co.* v. *Levitz,* 173 Conn. 15, 21, 376 A.2d 381 (1977). "When one has gone on wrongfully in a wilful invasion of another's rights in real property, the latter is entitled to have his property restored to its original condition even though the wrongdoer would thereby suffer great loss." Id., quoting *Tucker* v. *Howard,* 128 Mass. 361, 363 (1880). The wrongdoer should in no way benefit from his actions. Id.

In this case, Camarco wilfully violated an unambiguous provision in its lease. When this violation was called to its attention by Kaplan it not only failed to desist, it proceeded to make the grill operational and expand its operation. We cannot say that the court abused its discretion in excluding the evidence and issuing the injunction.

In considering Camarco's final claim that the court erred in ordering Camarco to pay attorneys' fees we must divide the award into three parts: (1) the order to Kaplan to pay the $1450 in attorneys' fees that Gino's incurred by suing Kaplan; (2) the order to Camarco to indemnify Kaplan for Gino's fees; and

(3) the order to Camarco to pay Kaplan's attorneys' fees of $935.50. We will consider the award of the $935.50 fee first.

We have reviewed Kaplan's exhibits that contain a breakdown of the $935.50 in fees. Although we are not able to ascertain the exact amounts, it is clear that a portion of that fee is for services provided in defending against Gino's and a portion is for services provided in suing Camarco.[4] Kaplan cannot collect those fees that it incurred in suing Camarco. The rule in Connecticut is that absent contractual or statutory authorization, each party must pay its own attorneys' fees. *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 280, 297, 472 A.2d 306 (1984); *State* v. *Bloomfield Construction Co.,* 126 Conn. 349, 359, 11 A.2d 382 (1940). Attorneys' fees in this case are not authorized by the lease or by statute. Although Kaplan argues that fees may be awarded upon a showing of fraud, malice or wantonness; 42 Am. Jur. 2d, Injunctions § 309; the court did not find any of these elements. That part of the award that covers the fees that Kaplan spent to sue Camarco cannot stand.

That part of the award, however, that covers Kaplan's attorneys' fees for defending against Gino's is correct. In the context of indemnification[5] the general rule is that an indemnitee (in this case, Kaplan)

---

[4] For example, defendant's exhibit 4 is a bill from Kaplan's counsel to Kaplan for services provided through July 29, 1982, totalling $475. The entries for April 3, 1982, "Review of complaint" and "Letter to bakery" clearly refer to tasks performed as part of Kaplan's defense against Gino's, while the June 7, 1982 entry, "Preparation of third party complaint," clearly refers to a task performed as part of Kaplan's suit against Camarco. We are unable to categorize other entries such as the one on July 12, 1982 entitled "Review of sort [sic] calendar marking." We leave this breakdown of services to the trial court.

[5] The lease between Kaplan and Camarco does not contain an express provision for indemnification. The right of indemnity is based on the equitable principle of implied indemnification. See *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 412, 207 A.2d 732 (1965).

may recover only those fees it incurred in defending the claim for which it is entitled to indemnification. *Burr* v. *Lichtenheim,* 190 Conn. 351, 363–64, 460 A.2d 1290 (1983); 41 Am. Jur. 2d, Indemnity § 36. The court found that Kaplan was entitled to be indemnified by Camarco for the judgment against Kaplan in *Gino's* v. *Kaplan.* Hence, on remand, the court should award Kaplan that portion of the $935.50 fee that was related to Kaplan's defense against Gino's.

It is necessary for us to consider the remaining awards together because for us to determine whether the court erred in ordering Camarco to indemnify Kaplan for having to pay Gino's fees, we must determine whether the court erred in ordering Kaplan to pay Gino's $1450 in fees. This, however, presents us with a procedural wrinkle. Because Kaplan did not appeal from the judgment against it, that award of fees is arguably not before the court. The question arises whether Camarco, in challenging the order of indemnity, can raise the propriety of the judgment against Kaplan. We hold that it can.

To hold otherwise would be anomalous. Kaplan could have appealed and had it done so the award of fees to Gino's would have been reversed on the same ground as described above—each party is to pay its own fees. *Gionfriddo* v. *Avis Rent A Car System, Inc.,* supra. Kaplan's failure to appeal should not result in Camarco, as indemnitor, having to pay an erroneous award. Hence, Camarco, by challenging the order to indemnify Kaplan, can attack the underlying award as erroneous. In so holding we rely on the reasoning of *Kicklighter* v. *Nails By Jannee, Inc.,* 616 F.2d 734 (5th Cir. 1980). In that case, the court allowed a third party defendant to assert on appeal claims of error in the main case (i.e., plaintiff *v.* defendant/third party plaintiff) even though the defendant/third party plaintiff did not appeal from that judgment. In so holding the court

turned to the language in rule 14 of the Federal Rules of Civil Procedure which provides that "a third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim" and concluded "[f]rom this provision, we think it logically follows that the third-party defendant may assert on appeal errors in the main case. See 6 C. Wright and A. Miller *Federal Practice and Procedure* § 1463 n.61 (1971)." Id., 738 n.1. We have an almost identical provision in Practice Book § 117 which provides in relevant part that "[t]he third-party defendant may also assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim." We see no reason to apply a different logic to the construction of this provision than that applied to the federal rule. Thus, we construe this provision as permitting Camarco, the third party defendant, to challenge the judgment against Kaplan in *Gino's* v. *Kaplan.*

In light of our previous discussion on attorneys' fees we find that the court erred in ordering Kaplan to pay Gino's fees and hence the order to Camarco to indemnify Kaplan was erroneous. This presents a second procedural wrinkle: the scope and effect of our finding of reversible error. The court erred in ordering Kaplan to pay Gino's attorneys' fees and hence it erred in ordering Camarco to indemnify Kaplan. Since Camarco properly appealed and prevailed on its claim, that part of the judgment against Camarco is reversed. At issue is whether the judgment against Kaplan, who did not appeal, should also be reversed. Once again, we are guided by *Kicklighter* v. *Nails By Jannee, Inc.,* supra. Faced with this exact question, the fifth circuit held: "Because the third-party defendant's liability is derivative of defendant's liability, and because the reversal of the judgment against the third-party defendant is based solely on an error in the main case, *i.e.,* plaintiff's case against defendant, we hold that third-party

defendant has appealed and asserted this error not only on its own behalf but also on behalf of defendant. Thus the third-party defendant's appeal operates, in this limited circumstance, as an appeal of the judgment of defendant as well as the judgment of third-party defendant." (Footnotes omitted.) Id., 742; accord *Sochanski* v. *Sears, Roebuck & Co.,* 689 F.2d 45, 49 (3d Cir. 1982); *Daniels* v. *Gilbreath,* 668 F.2d 477, 480 (10th Cir. 1982); *Hegger* v. *Green,* 646 F.2d 22, 29–30 (2d Cir. 1981); *In re Barnett,* 124 F.2d 1005, 1009 (2d Cir. 1942);[6] see also *In re Estate of McDill,* 14 Cal. 3d 831, 537 P.2d 874, 122 Cal. Rptr. 754 (1975); *In re Irene W.,* 121 N.H. 123, 126, 427 A.2d 24 (1981); *Kuhn* v. *Kuhn,* 301 N.W.2d 148, 151 (N.D. 1981); *Kure* v. *Chevrolet Motor Division,* 581 P.2d 603, 610 n.9 (Wyo. 1978);[7] but see *Bickford* v. *Jones,* 388 So. 2d 107, 108 (La. App. 1980).

---

[6] *Anthony* v. *Petroleum Helicopters, Inc.,* 693 F.2d 495, 497 (5th Cir. 1982), summarizes when federal courts will exercise their discretion to consider the judgment of a nonappealing party: "when the reversal 'wipes out all basis for recovery against the nonappealing as well as against the appealing defendant,' *Daniels* v. *Gilbreath,* 668 F.2d 477 (10th Cir. 1982); *Kicklighter* v. *Nails By Jannee, Inc.,* 616 F.2d 734, 742–45 (5th Cir. 1980); when the failure to reverse with respect to the nonappealing party will frustrate the execution of the judgment in favor of the successful appellant, *In re Barnett,* 124 F.2d 1005, 1008–12 (2d Cir. 1942); or when the appealed decision could reasonably be read as not being adverse to the nonappealing party. *Bryant* [v. *Technical Research*], 654 F.2d [1337], 1342–43 [(9th Cir. 1981)]." This is not to suggest that in all cases a judgment will be set aside to benefit a nonappealing party. In *Anthony* v. *Petroleum Helicopters, Inc.,* for example, the court found that none of the three exceptions was met and thus would not extend the benefits of its reversal of summary judgment to the nonappealing parties. Id., 498.

[7] *Kuhn* v. *Kuhn,* 301 N.W.2d 148, 151 (N.D. 1981), describes when state courts exercise their discretion to reverse the judgment with respect to a nonappealing party. "We recognize the general rule that a nonappealing party is bound by the decision of the lower court. However, there is an exception to that rule, which we conclude is applicable to the instant case, that when the rights of all the parties are interwoven or when the erroneous legal decision of the lower court forms the basis for all of the parties' rights the nonappealing party is entitled to the benefit of the appellate court determination." (Citations omitted.)

Our case falls squarely within the rule announced in *Kicklighter*. Camarco's liability, based on implied indemnity; footnote 5, supra; is derivative of Kaplan's liability to Gino's and our reversal of the judgment against Camarco is based solely on an error in the main case of *Gino's* v. *Kaplan*. Though we do not condone Kaplan's failure to appeal and do not encourage litigants to entrust their interests to other parties; see *Kicklighter* v. *Nails By Jannee, Inc.*, supra, 744 n.16; in this instance, it would be unjust to deny Kaplan the benefit of Camarco's reversal. Accordingly, both judgments are vacated insofar as Kaplan was ordered to pay and Camarco was ordered to indemnify Kaplan for Gino's attorneys' fees.

There is error in part, the judgment in the main case of *Gino's* v. *Kaplan* is set aside only with respect to the award of attorneys' fees. The judgment in the case of *Kaplan* v. *Camarco* is set aside only with respect to attorneys' fees and a new trial is ordered limited to the determination of Camarco's liability for the fees Kaplan incurred in defending against Gino's.

In this opinion the other judges concurred.