John WILLIAMS

v.

HOFFMAN/NEW YORKER, INC.

v.

SEICKEL & SONS, INC.

John WILLIAMS

v.

RHEEM MANUFACTURING CO. et al.

v.

SEICKEL & SONS, INC.

Nos. 3:94CV1458(AHN), 3:94CV1930(AHN).

United States District Court,
D. Connecticut.

April 26, 1996.

Madonna A. Sacco, Colleen D. Fries, Bai, Pollock & Dunnigan, Bridgeport, CT, for Plaintiff.

Phyllis M. Pari, Wiggin & Dana, New Haven, CT, J. Kevin Golger, McNamara & Kenney, Bridgeport, CT, for Defendant.

### RULING ON THIRD–PARTY DEFENDANT'S MOTIONS TO DISMISS THIRD–PARTY COMPLAINTS

NEVAS, District Judge.

Plaintiff John Williams ("Williams") commenced independent actions pursuant to the Connecticut Product Liability Act, Conn.Gen. Stat. § 52–572m (1988) against Rheem Manufacturing Co. and Rheem Textile Systems, Inc., on the one hand, and Hoffman/New Yorker, Inc., on the other, in Connecticut Superior Court in 1994. The defendants removed the state court actions to the United States District Court for the District of Connecticut on November 15, 1994. *See Williams v. Rheem Manufacturing Co.*, No. 3:94CV1930(PCD); *Williams v. Hoffman/New Yorker, Inc.*, No. 3:94CV1458(AHN). In October 1995, the defendants commenced this third-party action against Seickel & Sons, Inc. ("Seickel") for contribution and indemnification.[1] The cases subsequently were consolidated under

---

1. The court will refer to Hoffman/New Yorker and Rheem collectively as the "third-party plaintiffs."

*Williams v. Hoffman/New Yorker, Inc.,* No. 3:94CV1458(AHN).

Currently before the court are Seickel's motions to dismiss the third-party complaints pursuant to Rule 12(b)(6), Fed.R.Civ.P. For the reasons that follow, Seickel's motions to dismiss the third-party complaints [docs. ## 25, 38] are DENIED.

## STANDARD OF REVIEW

■ In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Allen v. West-Point–Pepperell, Inc.* 945 F.2d 40, 44 (2d Cir.1991). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686).

## FACTS

For the purposes of this ruling, the court accepts the following factual allegations contained in the third-party complaints as true.

Williams suffered burns on his arms when a garment press that he was operating at Thomas Cleaners and Chinese Laundry ("Thomas Cleaners") closed on his hands and arms on October 23, 1991. The third-party plaintiffs manufactured the garment press on which Williams was injured. Williams alleges that the garment press was defective and unreasonably dangerous.

Seickel is a New Jersey company that reconditions, assembles, sells, and installs garment presses. Seickel reconditioned the garment press on which Williams was injured and modified it from its original condition. Seickel then sold the garment press to Thomas Cleaners and installed it at the store.

The third-party plaintiffs allege that Seickel was negligent, that its negligence, not theirs, was the direct and immediate cause of the injury, that it had exclusive control of the situation, and that they did not know of Seickel's negligence, had no reason to anticipate it, and reasonably could have relied on Seickel to act without negligence.

## DISCUSSION

Seickel moves to dismiss the third-party plaintiffs' indemnity and contribution claims. It first argues that they have failed to allege a necessary element of an indemnity claim under Connecticut law: that an independent legal relationship exists between the indemnitee and the indemnitor. Second, Seickel argues that it cannot be deemed to have exercised "exclusive control," as required under Connecticut law, as a matter of law. Last, Seickel argues that the third-party plaintiffs have failed to allege the requisite type of injury compensable under the Connecticut Product Liability Act and thus cannot maintain their indemnity and contribution claims against it.

■ Absent a contract to indemnify, a party is entitled to indemnification "only upon proving that the party against whom indemnification is sought either dishonored a contractual provision or engaged in some tortious conduct." *Kaplan v. Merberg Wrecking Corp.,* 152 Conn. 405, 415, 207 A.2d 732 (1965). A party seeking indemnification based on a tort theory of liability must prove that the injury resulted from the "active or primary negligence" of the party against whom reimbursement is sought. *See id.* To prove "active or primary negligence," and thus to obtain indemnification, a party must establish four elements: (1) that third-party defendant was negligent; (2) that its negligence, not the third-party plaintiff's negligence, was the direct and immediate cause of the injury; (3) that the third-party defendant had exclusive control of the situation; and (4) that the third-party plaintiff did not know of

the charged party's negligence, had no reason to anticipate it, and reasonably could have relied on the charged party to act without negligence. *See id.* at 416, 207 A.2d 732.

■ The parties agree that a party must allege these four elements to state a claim for indemnification under Connecticut law. The parties, however, disagree about whether *Atkinson v. Berloni,* 23 Conn.App. 325, 328, 580 A.2d 84 (1990), added a fifth element to the *Kaplan* test: that "the party seeking indemnification must establish that the alleged indemnitor owed that party a duty based on an independent legal relationship." *Id.* at 328, 580 A.2d 84.

Seickel argues that, though the Connecticut Supreme Court has not expressly incorporated this factor into *Kaplan,* the Connecticut Superior Courts have read such a requirement into *Kaplan.* Consequently, according to Seickel, a third-party plaintiff must allege, and later prove, an independent legal relationship between it and the indemnitor in order to state a claim for indemnification. Seickel argues that, in this case, the third-party plaintiffs have failed to allege that they had any form of independent legal relationship with Seickel from which the court could find that Seickel owed a duty to the third-party plaintiffs. Consequently, according to Seickel, the third-party plaintiffs have failed to state an indemnity claim.

The third-party plaintiffs argue that a party seeking indemnification is not required to allege an independent legal relationship to state an indemnity claim. The third-party plaintiffs contend that the *Atkinson* court misconstrued the cases upon which it relied in concluding that the existence of an independent legal relationship is a necessary element of an indemnification claim.

The Connecticut case law on this issue is anything but clear, *compare Robillard v. Asahi Chemical Indus. Co.,* No. CV94–0539213–S, 1995 WL 584365, at *9 (Conn.Super.Ct. Sept. 27, 1995) (holding that independent legal relationship between indemnitee and indemnitor required to support indemnification claim) *with Commercial Union Ins. Co. v. City of New Haven,* No. 243717, 1991 WL 61437, at *4 (Conn.Super.Ct. Apr. 10, 1991) (holding that independent legal relationship

between indemnitee and indemnitor not required to support indemnification claim), and the Connecticut Supreme Court has not addressed the issue.

In *Atkinson,* the court held that an automobile driver involved in an accident with a motorcycle could not assert an indemnity claim against another automobile driver, who he claimed negligently signaled that he could make a left turn, because the alleged indemnitor did not owe a duty of care to the indemnitee other than a general duty to behave as a reasonable person in similar circumstances. *Id.* at 329, 580 A.2d 84. In reaching this holding, the *Atkinson* court reasoned that "implicit in indemnification cases is the requirement of an independent legal relationship between the indemnitor and the indemnitee giving rise to a special duty." *Id.* at 327, 580 A.2d 84. Although the *Atkinson* court recognized that "most Connecticut indemnification cases do not expressly address the requirement of an independent legal relationship between the parties[,]" it found that "none [of the cases] allow[ed] a claim for indemnification in the absence of such a duty or relationship." *Id.* at 328, 580 A.2d 84. It thus concluded that "a party seeking indemnification must establish that the alleged indemnitor owed that party a duty based on an independent legal relationship." *Id.* at 328, 580 A.2d 84.

In reaching its conclusion that Connecticut case law implicitly required the existence of an independent legal relationship to state an indemnification claim, the court analyzed *Ferryman v. Groton,* 212 Conn. 138, 561 A.2d 432 (1989), *Farm Bureau Mut. Automobile Ins. Co. v. Kohn Bros. Tobacco Co.,* 141 Conn. 539, 107 A.2d 406 (1954), and *Maccarone v. Hawley,* 7 Conn.App. 19, 507 A.2d 506 (1986). In *Ferryman, Farm Bureau,* and *Maccarone,* the courts held that the Workers' Compensation Act did not bar a third-party action for indemnity against an injured employee's employer if the third-party plaintiff established an independent legal relationship between the third-party plaintiff and the third-party defendant. The courts' focus on the existence of an "independent legal relationship" between the injured employee's employer and the party seeking indemnification

occurred in the narrow context of determining whether the exclusive remedy provision of the Workers' Compensation Act barred a third-party action for indemnity against an injured employee's employer. The *Atkinson* court's reliance on those cases to devise an "independent legal relationship" test applicable to a broader class of indemnity cases was misplaced.

The *Atkinson* court relied on four additional cases—*Burkert v. Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 579 A.2d 26 (1990), *Malerba v. Cessna Aircraft, Co.*, 210 Conn. 189, 554 A.2d 287 (1989), *Beaudoin v. Town Oil Co.*, 207 Conn. 575, 542 A.2d 1124 (1988), and *Gino's Pizza of East Hartford, Inc. v. Kaplan*, 193 Conn. 135, 475 A.2d 305 (1984)— to support the proposition that Connecticut case law did not permit indemnification absent a duty or relationship between the parties. The court implied that a contractual relationship between a licensee and a licensor was sufficient to support an indemnity claim in *Burkert*, that a contractual relationship between an airplane owner and its manufacturer was sufficient to support an indemnity claim in *Malerba*, that a contractual relationship between a home owner and an insulation contractor was sufficient to support an indemnity claim in *Beaudoin*, and that a landlord-tenant relationship was sufficient to support an indemnity claim in *Gino's Pizza*. *See id.* at 328, 580 A.2d 84. These cases, however, cannot support the weight that the *Atkinson* court placed on them.

In *Burkert*, the court held that the indemnitee failed to present any theory of contractual or tortious liability that would support a claim for indemnity against the alleged indemnitor. In reaching this holding, the court found that the third-party plaintiff failed to establish that the third-party defendant was liable to it under the theories of negligence, strict liability, and breach of warranty. *See Burkert*, 216 Conn. at 84, 579 A.2d 26. The *Malerba* court held that a common law cause of action for indemnity

continued to exist in product liability actions after the adoption of the Connecticut Product Liability Act.[2] *See Malerba*, 210 Conn. at 198, 554 A.2d 287. It did not address the elements of such a cause of action. Similarly, in *Beaudoin*, the court never reached the issue of whether the proposed third-party defendant was liable under indemnity principles. *See Beaudoin*, 207 Conn. at 589, 542 A.2d 1124. Rather, the court affirmed the trial court's dismissal of the defendant/third-party plaintiff's second third-party complaint based on the "prior pending action" doctrine. *See id.* Likewise, in *Gino's Pizza*, the court held that the trial court erred in ordering the third-party defendant to indemnify the third-party plaintiff for certain attorneys' fees. *See Gino's Pizza*, 193 Conn. at 144, 475 A.2d 305. None of these cases suggests, either implicitly or explicitly, that an indemnitee fails to state an indemnity claim absent an independent legal relationship between the indemnitee and the alleged indemnitor.

The Connecticut Supreme Court has not yet addressed whether the existence of an independent legal relationship between an indemnitee and indemnitor is a necessary element of a common law indemnity claim. Absent a controlling decision by the Connecticut Supreme Court, a decision of an intermediate state court on a question of state law is entitled to "persuasive, if not decisive, consideration," by a federal court sitting in diversity absent persuasive evidence that the highest court would reach a different conclusion. *See In re E. & S. Dists. Asbestos Litig.*, 772 F.Supp. 1380, 1389 (E. & S.D.N.Y.1991), *aff'd in part & rev'd in part sub nom.*, 971 F.2d 831 (2d Cir.1992). The court believes that the court's reasoning in *Atkinson* is incorrect and thus does not find it persuasive authority. The case law cited by *Atkinson* does not support the proposition that a third-party plaintiff must allege, and later prove, the existence of an independent legal relationship between that party and the alleged indemnitor in order to state an claim for indemnity.

**2.** Moreover, the *Atkinson* court misstated the relationship between the aircraft manufacturer and the aircraft owner and mechanic. Contrary to the *Atkinson* court's statement that a contractual relationship existed between the indemnitee and the indemnitor, the aircraft manufacturer neither alleged that a contract existed between it and the owner nor that it employed the mechanic who allegedly failed to inspect the aircraft properly. *See Robillard*, 1995 WL at *5 (discussing *Atkinson* court's error).

The court thus believes that, if called upon to decide the present issue, the Connecticut Supreme Court would conclude that the existence of an "independent legal relationship" is not a necessary element of a common law indemnity claim under Connecticut law. *Cf. Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 132 (2d Cir.1984) (concluding that New Jersey intermediate appellate court's reasoning flawed and declining to apply court's holding). Hence, this court concludes that the third-party plaintiffs' failure to plead the existence of an independent legal relationship between Seickel and themselves is not fatal to their indemnity claim.

Seickel next argues that the third-party plaintiffs' cause of action fails because it could not have been in "exclusive control of the situation," as required by *Kaplan*, as a matter of law. It contends that it simply reconditioned the garment press and sold the machine to Thomas Cleaners and that others were responsible for its installation, maintenance, and use. (*See* Mem.Law Support Mot. Dismiss Third–Party Compl. 6 [doc. # 39].)

■ The question of whether a party is primarily negligent and thus liable to indemnify another tortfeasor is a question of fact. *See Weintraub v. Richard Dahn, Inc.*, 188 Conn. 570, 573–74, 452 A.2d 117 (1982) (per curiam). Likewise, the question of whether a party possessed exclusive control of a situation ordinarily is a question of fact. *See id.; Kaplan*, 152 Conn. at 418, 207 A.2d 732; *Coates v. Rolscreen Co.*, No. CV910330146, 1996 WL 56206, at *3 (Conn.Super.Ct. Jan. 19, 1996) (holding that "exclusive control" element raises question of fact and declining to find that third-party defendant did not have exclusive control as a matter of law on motion to strike); *Torrington Country Club v. Ply Gen*, No. CV92–061340, Conn.L.Rptr. 53, 55, 1994 WL 632300 (Conn.Super.Ct. Nov. 7, 1994) (stating that "this court is unwilling to conclude, as a matter of law, that the parting with possession of the products by [the third-party defendants] prevents them from being in exclusive control of the situation."); *Bernard v. Marriott Corp.*, No. CV91–0114261S, 1992 WL 108040, at *1 (Conn.Super.Ct. May 11, 1992) (same). In

product liability actions, the Connecticut courts have defined "exclusive control" to include not only control over the premises where the injury occurred, but also control over the condition or defect causing the injury. *See, e.g., Coates*, 1996 WL 56206, at *3. Consequently, the question of "exclusive control" in a products liability case is not properly resolved on a motion to dismiss.

Last, Seickel argues that the third-party plaintiffs' indemnity and contribution claims should be dismissed because they have failed to allege a type of injury compensable under the Connecticut Products Liability Act and thus cannot state a claim against Seickel under that statute.

■ The third-party plaintiffs have not asserted a direct product liability claim against Seickel, however. Williams, the injured party, sued the defendants/third-party plaintiffs, the manufacturers of the allegedly defective garment press, under the Product Liability Act in the first-party action. The third-party plaintiffs now have asserted common law indemnity and contribution claims against Seickel in a third-party action. A defendant in a pending product liability action may bring a common law contribution or indemnity action by impleading the allegedly liable third-party. *See Malerba*, 210 Conn. at 195–96, 198, 554 A.2d 287; *Coates*, 1996 WL 56206, at *4; *Torrington Country Club v. Ply Gen*, No. 061340, 1994 WL 632300, at *4; *see also Stefano v. Smith*, 705 F.Supp. 733, 735–36 (D.Conn.1989) (concluding that product seller seeking contribution may implead party not in chain of distribution); *Integrated Power Tech., Inc. v. Dal–Tile Corp.*, No. 292146, 1991 WL 172835, at *2 (Conn.Super.Ct. Sept. 3, 1991) (dismissing indemnity claim brought pursuant to Product Liability Act and observing that common law indemnity claim viable cause of action and would have survived motion to strike if properly alleged)

■ Contrary to Seickel's argument, section 52–577a(b) does not limit impleader actions to "claimants," as that term is defined in section 52–572m(c), or to those parties who have suffered compensable injuries, as that

term is defined in section 52–572m(d).[3] The express language of section 52–577a(b) allows any "product seller" to implead "any third party who is or may be liable for all or part of the claimant's claim...." Conn.Gen.Stat. § 52–577a(b).

In sum, the third-party plaintiffs adequately have stated claims for indemnity and contribution. Accordingly, Seickel's motions to dismiss the third-party plaintiffs' complaints are DENIED.

## CONCLUSION

For the foregoing reasons, the third-party defendant's motions to dismiss the third-party complaints [docs. ## 25, 38] are DENIED.

SO ORDERED.

---

**3.** Under § 52–572m(c), a claimant is "a person asserting a product liability claim for damages incurred by the claimant...." Under § 52–572m(b), a product liability claim includes "claims or actions brought for personal injury, death, or property damage caused by the manufacture, construction, design ... of any product."