[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff filed a three count complaint against the defendant on November 9, 1999. He then filed an amended complaint on January 10, 2000 and a second amended complaint on August 4, 2000 alleging the following: (1) recovery of costs to. prosecute the summary process action[1]; (2) rent and/or use and occupancy from August 1999 through November 1999, and 15% of that amount for attorney's fees; (3) attorney's fees for the summary process action; (4) damages to the premises and 15% of that amount for attorney's fees; and (5) costs for a tank of oil.
The defendants filed an answer and a counterclaim alleging that they paid for some repairs and replacement of carpets and should be given credit.
The plaintiff and the defendants entered into a written lease agreement on September 29, 1992.[2] The lease started on October 1, 1992 and ended March 1, 1993. The monthly rental amount was $800.00. The parties CT Page 6275 continued on a month to month lease as provided in paragraph #18 (HOLD-OVER] under the same terms. The plaintiff served a notice to quit on September 13, 1999 for non-payment of rent for the month of September. The parties entered into a stipulation on November 1, 1999[3]
where the plaintiff reserved the right to pursue the amount claimed as owed for rent and/or use and occupancy and the defendants would vacate the premises on November 30, 1999.
The plaintiff is seeking damages, attorney's fees and costs in the amount of $6,796.32. The defendants are seeking a credit for repairs and replacement in the amount of $1,477.77.
 DISCUSSION,
COUNT I
The plaintiff is seeking costs for the summary process action in the amount of $151.28. The plaintiff submitted an undisputed bill of costs.[4] In accordance with paragraph #12 of the lease agreement the plaintiff is awarded costs in the amount of $151.28.
COUNT II
The plaintiff claims rent for August 1999 and September 1-13, 1999, and use and occupancy for September 14, 1999 through November 1999 in the amount of $3,225.06. He also claims 15% of that amount for attorney's fees pursuant to paragraph #12 of the lease agreement. The parties are in agreement that no amount was paid from September through November 1999. In the summary process action[5] the plaintiff claimed non-payment for the month of September. That matter was resolved by stipulation on November 1, 1999. The plaintiff regained possession and the defendants continued to occupy the premises until November 30, 1999. Therefore, the plaintiff is owed rent and/or use and occupancy for September through November 1999. The plaintiff is awarded $2,400.00.[6]
COUNT III
The plaintiff claims $900.00 for attorney's fees for the summary process action (eviction]. The plaintiff did not submit proof of fees for this action. However, the court may award reasonable fees. Both the plaintiff and the defendant agree that there was some negotiation between them as to a purchase and sale of the premises. They did not reach an agreement and the plaintiff sold the property to someone else on March 12, 2000. The plaintiff believes a considerable amount of time was spent on the unsuccessful negotiations. CT Page 6276
The lease agreement, paragraph permits the award of fees to prosecute the summary process action for possession and to collect rent owed. The plaintiff is awarded reasonable attorney's fees in the amount of $500.00.
COUNT IV
The plaintiff seeks to recover damages in the amount of $1,552.25 which represents a total of $2,352.25 less a credit of $800.00 classified as security deposit. The plaintiff submitted photographs to support his claim. The plaintiff also submitted copies of receipts and gave testimony about his expenditures.
The plaintiff purchased the residence in 1987. Cynthia Fichtner stated that she and her family were tenants from August 1992 through September 30, 1993. She, is clearly mistaken because the plaintiff and defendants agree that the defendants started their occupancy October 1, 1992. However, they agree that she was the tenant prior to the defendants. The defendants occupied the premises from October 1, 1992 through November 30, 1999 (seven years and one month]. The plaintiff sold the property on May 12, 2000.
The plaintiff testified about receipts and invoices which covered purchases and services from November 29, 1999 [#7] to May 8, 2000. [#'s 16 and 17]. Some of the costs claimed include the services of a locksmith on December 27, 1999 [#18] and a replacement key made on March 27, 2000 [#11]. Craig Phelps stated that he and his father were hired to clear the trash that was left behind. He further stated that there wasn't anything in either the attic or the bedrooms and the kitchen and upstairs were being painted when he was there. The dumpster was there when he arrived and remained there for approximately one week. Mr. Phelps also said he had a key to get in and out of the residence. The dumpster was placed on December 17, 1999 [#19]. The plaintiff stated that the window sash and cord usually last about seven years and he had never replaced them since his purchase in 1987. Both parties agree that the defendants replaced the carpets and paid the cost of fixing the baseboard heat. The defendants also stated that their children did some damage to the bathroom and closet walls.
Many of the items listed on schedule B would have had to be replaced by the plaintiff due, to normal wear and tear and general replacement. Additionally, a reasonable inference can be made that some of the repairs and/or replacement were done to prepare the house for sale. The replacement and/or repairs by the defendant are such that the value of the property was not diminished and may even have been enhanced.
The plaintiff is awarded damages as follows: CT Page 6277
59.15 receipt #2
 54.92 receipt #4 bathroom repairs 423.75 receipt #5 pro rated use of dumpster 288.95 receipt #19
clean up — Greg and father 200.00
106.00 receipt #20
 labor 150.00 __________ TOTAL $1,281.67
The plaintiff stated that the defendants should get a credit for the security deposit of $800.00.
The plaintiff is awarded damages in the amount of $481.67.[7]
COUNT IV
The plaintiff claims $250.00 for the cost of a full tank of oil. The plaintiff claims this amount because the defendants left the tank empty when they vacated the premises. The defendants did not dispute this. In accordance with paragraph #21 of the lease agreement the plaintiff is awarded $250.00.
ATTORNEY'S FEES
Each party to litigation must bear his or her own litigation costs, including attorney's fees, unless an attorney's fee award is authorized by lease or statute. Gino's Pizza of East Hartford, Inc. v. Kaplan,193 Conn. 135, 475 A.2d 305 (1984) The lease agreement authorized an award for costs and attorney's fees at no greater than 15%. Attorney's fees must be reasonable and require proof of the reasonableness of the fee in light of what the attorney has done.
The plaintiff claims attorney's fees as follows: fifteen percent [15%] of the amount awarded for rent and/or use and occupancy and fifteen percent [15%] of the amount of damages. Paragraph #12 (DEFAULT] provides for the awarding of such fees at no more than 15%. The amount due in Count II for rent and/or use and occupancy is $2,400.00. The amount due for damages in Count IV is $481.67. The plaintiff is awarded attorney's fees in the amount of $432.25.[8]
CT Page 6278
COUNTERCLAIM
The defendants allege that they paid for the replacement of carpets for a total cost of $866.59 and the installation of replacement baseboard at a cost of $561.18 for a total of $1,427.77. Both the defendants and the plaintiffs agree that the baseboard heat was installed and the carpets were installed and/or repaired. The defendants attached receipts as proof of payment. The plaintiff stated that one of the bedrooms had a carpet when the defendants moved in. However, there was no dispute as to this being replaced and the other two being installed.
As a matter of equity the defendants are entitled to the costs for the repair and replacement in the amount of $1,477.77.
Judgment for the plaintiff as follows;
Count I $ 151.28
Count II $2,400.00
Count III $ 200.00
Count IV $ 481.67
Count V $ 250.00
 Attorney's fees $ 432.25 --------- TOTAL $3,915.20
Judgment for the defendants as follows:
Counterclaim $1,477.77
Therefore, net judgment to the plaintiff Richard F. Miner in the amount of $2,437.43.
Payments ordered as follows:
$50.00 per week to plaintiff's counsel as trustee, the first payment due Friday June 1, 2001 and each Friday thereafter until the amount is paid in full.
 _____________________ CRAWFORD, JUDGE
CT Page 6279