## GABRIEL LEVINE ET AL. *v.* ADVEST, INC.
### (SC 15586)

Callahan, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued January 22—officially released May 26, 1998

*Thomas P. Willcutts*, with whom was *John J. Pavano*, for the appellants (plaintiffs).

*Dean M. Cordiano*, with whom was *Lauren R. Greenspoon*, for the appellee (defendant).

*Opinion*

CALLAHAN, C. J. The principal issue in this appeal is whether the parties' contracts provide that disputes regarding timeliness of claims arising under the contracts are to be resolved by arbitrators in accordance with the rules of the arbitrating body, or by a court of competent jurisdiction in accordance with the relevant statutes of limitation. The plaintiffs[1] brought this action

---

[1] The named plaintiff, Gabriel Levine, brought suit as owner of his individual brokerage account, as representative of the estate of his deceased wife, Anna V. Levine, in connection with her individual brokerage account, and as owner of an account he had established jointly with his wife. Gabriel Levine died in 1992. Blanche R. Rosenzweig Levine, representative of the estate of Gabriel Levine, has been substituted in that capacity for Gabriel Levine as a plaintiff in connection with Gabriel Levine's individual account and the joint account. Arnold Slotkin, successor to Gabriel Levine as representative of the estate of Anna V. Levine, has been substituted in that capacity for Gabriel Levine as a plaintiff in connection with Anna Levine's individual account.

Robert E. Berman, acting in his capacity as trustee of the Levine-Yeshiva University Trust, brought suit in connection with the Levine-Yeshiva University Trust account. Yeshiva University brought suit in connection with the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund, and Gale Investments, a Connecticut partnership, brought suit as owner of the Gale Investments account.

in the Superior Court pursuant to General Statutes § 52-410[2] seeking an order directing the defendant, Advest, Inc., to proceed with the arbitration of the plaintiffs' claims regarding six investment accounts that were maintained with the defendant. The plaintiffs moved for summary judgment maintaining that the arbitration clauses contained in the contracts that governed the six investment accounts entitled them to such an order as a matter of law. The defendant, in turn, moved for partial summary judgment claiming that all but one of the plaintiffs' claims were not arbitrable because they were time barred by statutes of limitation. The trial court denied the plaintiffs' motion for summary judgment and granted partial summary judgment in favor of the defendant. The plaintiffs appealed from the judgment of the trial court to the Appellate Court claiming that the trial court had ruled improperly on the summary judgment motions. We transferred the appeal to ourselves pursuant to Practice Book § 4023, now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c). We reverse both of the trial court's rulings on the parties' motions for summary judgment.

By way of background, in September, 1986, the named plaintiff, Gabriel Levine, opened a personal investment account with the defendant and also made arrangements to open investment accounts for Gale Investments, a Connecticut partnership of which he was a member, and the Yeshiva University-Levine Trust, a charitable trust that had been established for the

---

[2] General Statutes § 52-410 provides in relevant part: "(a) A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order directing the parties to proceed with the arbitration in compliance with their agreement. The application shall be by writ of summons and complaint, served in the manner provided by law. . . ."

purpose of providing unrestricted funds to Yeshiva University. Anna V. Levine, Gabriel Levine's wife, subsequently opened a personal account and, together with her husband, established a joint account with the defendant. In May, 1987, Gabriel Levine opened an account for the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund, a fund that had been established in 1979 for the purpose of providing Yeshiva University with funds to be used solely to enable "needy and deserving young men and women to obtain [a] Torah education . . . ." We refer herein to those six investment accounts collectively as the Advest accounts.

Written contracts governed each of the Advest accounts. Gabriel Levine executed the contracts related to his personal account, the Gabriel Levine and Anna V. Levine joint account, the Gale Investments account and the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund account. Anna V. Levine signed the contracts that governed her personal account and the Gabriel Levine and Anna V. Levine joint account. Robert E. Berman, trustee of the Yeshiva University-Levine Trust, executed the contracts related to the Yeshiva University-Levine Trust account.

All of the contracts that governed the Advest accounts contain identical arbitration and choice of law clauses. The arbitration clauses provide in relevant part that "[i]t is understood that the following agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver [of the right to seek a judicial forum] would be void under the federal securities laws. The [parties agree] . . . that except as inconsistent with the foregoing sentence, *all controversies which may arise* . . . concerning any transaction or the construction, performance or breach of this . . . agreement . . . *shall be determined by arbitration in*

accordance with the rules then prevailing of the Arbitration Committee of the National Association of Securities Dealers, Inc., the American Arbitration Association, the Board of Arbitration of the New York Stock Exchange or the Board of Arbitration of the American Stock Exchange . . . ." (Emphasis added.) The choice of law clauses provide in relevant part that "[t]his [a]greement and its enforcement shall be governed by the laws of the State of New York." The arbitration and choice of law clauses are the only provisions of the parties' contracts that are relevant to this appeal. Within this opinion we refer to the arbitration clauses and the choice of law clauses collectively as the parties' agreement.

On September 22, 1987, the plaintiffs executed the documents necessary to transfer the assets held in the Advest accounts to accounts that the plaintiffs had established with PaineWebber, Inc. (PaineWebber).[3] The assets were transferred from Advest to PaineWebber in early October, 1987. The plaintiffs assert that at the time of the transfer, the Advest accounts contained cash and fully paid securities with a combined value of more than $30,000,000, as well as stock option contracts exposing the accounts to liabilities in excess of $100,000,000.

In mid-October, 1987, after the transfer but before any significant trading activity had taken place in the accounts that had been transferred to PaineWebber, the stock market fell 769 points. The precipitous market

---

[3] The plaintiffs explain that, in July, 1987, Charles Badain, a broker employed by the defendant, informed Gabriel Levine that the defendant would no longer provide complete insurance coverage for the Advest accounts, and that Badain, having determined that PaineWebber was willing to provide the level of insurance coverage the plaintiffs desired, had obtained employment at PaineWebber in order to continue to serve as the broker for the securities held in the Advest accounts.

decline caused margin calls[4] to take place in the accounts that had been transferred to PaineWebber. Because the plaintiffs were unable to meet the resulting demands for cash, their accounts' assets were liquidated by PaineWebber. The plaintiffs allege that due to the stock option contracts, four of the six accounts that had been transferred to PaineWebber sustained not only 100 percent losses, but also a combined deficit of more than $4,000,000, and that the two remaining accounts declined in value to only $150,000.

On September 21, 1993, the plaintiffs brought suit in the Superior Court alleging that the Advest accounts had been mishandled by the defendant and its former employee, Charles Badain. See *Levine* v. *Advest, Inc.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-93-0529887-S.[5] Specifically, the plaintiffs asserted claims against the defendant for breach of contract, breach of fiduciary duty, breach of the duty of good faith and fair dealing, fraudulent misrepresentation, fraudulent nondisclosure of material facts, negligence and breach of professional standards of conduct. On the basis of those same claims,

[4] "A margin call is a demand by a broker that an investor deposit additional cash or securities to eliminate or reduce a margin deficiency. See 12 C.F.R. § 220.2 (n) (1992). A margin deficiency results when the equity in an investor's account is less than that required by law to support the account's liabilities. See 12 C.F.R. § 220.2 (o) (1992)." (Internal quotation·marks omitted.) *First Union Discount Brokerage Services, Inc.* v. *Milos,* 997 F.2d 835, 838 n.4 (11th Cir. 1993). "The purpose of margin call rules is to protect brokers from the risks associated with insufficiently secured accounts, and to prevent customers from carrying vast exposure in their accounts without adequate capital to cover their positions." (Internal quotation marks omitted.) Id., 847. "If investors fail to meet margin calls in their accounts, their brokers, pursuant to contract, may liquidate their positions to satisfy the margin calls." Id., 838.

[5] In addition to the parties listed as plaintiffs in the present action, the complaint by which the court proceedings were initiated also listed the partners of Gale Investments as individual plaintiffs. The partners of Gale Investments did not execute individual arbitration agreements with the defendant and, accordingly, they were not included as plaintiffs in the complaint by which the present action subsequently was instituted.

the plaintiffs simultaneously initiated arbitration proceedings against the defendant before the Board of Arbitration of the New York Stock Exchange.

Citing the Federal Arbitration Act (arbitration act); see 9 U.S.C. §§ 1 through 16; and General Statutes §§ 52-409[6] and 52-410,[7] the plaintiffs subsequently filed a motion in the trial court for a stay of the court proceedings they had initiated and an order directing the defendant to proceed with arbitration before the Board of Arbitration of the New York Stock Exchange. The defendant objected to the plaintiffs' motion to stay the court proceedings and to compel arbitration. After briefing and oral argument, the trial court found that in the six years immediately prior to the initiation of arbitration proceedings, only one transaction had occurred in the Advest accounts. Citing rule 603 of the New York Stock Exchange, which provides in relevant part that "[n]o dispute . . . shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy," the trial court concluded that the plaintiffs were not eligible, under the rules of the Board of Arbitration of the New York Stock Exchange, to bring arbitration proceedings before that body regarding any transaction other than the one transaction that had occurred in the six years immediately prior to the initiation of arbitration proceedings in September, 1993. Except as to that

---

[6] General Statutes § 52-409 provides: "If any action for legal or equitable relief or other proceeding is brought by any party to a written agreement to arbitrate, the court in which the action or proceeding is pending, upon being satisfied that any issue involved in the action or proceeding is referable to arbitration under the agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making application for the stay shall be ready and willing to proceed with the arbitration."

[7] See footnote 2 of this opinion.

one transaction, the court consequently denied the plaintiffs' motion to stay court proceedings and compel arbitration.

Subsequent to the trial court's denial of the plaintiffs' motion to stay court proceedings and to compel arbitration, the plaintiffs became aware that their motion to compel arbitration might have been procedurally defective because even if a party seeking to compel arbitration has filed a motion, pursuant to § 52-409, to stay legal proceedings in the court in which such proceedings are pending, § 52-410 arguably requires the party to institute an entirely distinct legal action, by separate writ of summons and complaint, in order to obtain an order directing the opposing party to proceed with arbitration. See *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, 223 Conn. 761, 764–65 nn. 4 and 5, 613 A.2d 1320 (1992).

The plaintiffs, therefore, did not file a motion for reconsideration of, or an appeal from, the order of the trial court denying their motion to compel the defendant to submit to arbitration before the Board of Arbitration of the New York Stock Exchange. Instead, pursuant to § 52-410, the plaintiffs instituted this action, by way of separate complaint, seeking an order directing the defendant to proceed with arbitration before the American Arbitration Association.[8]

The plaintiffs subsequently moved for summary judgment as to their application for an order compelling arbitration before the American Arbitration Association, maintaining, inter alia, that the parties' agreement, which required them to arbitrate "all controversies which may arise," entitled them, as a matter of law, to

---

[8] The rules of the American Arbitration Association do not include a "six year" eligibility rule analogous to rule 603 of the Board of Arbitration of the New York Stock Exchange. New York Stock Exchange, Inc., Constitution and Rules (CCH 1997) ¶2600, p. 4311.

such an order. The defendant simultaneously moved for partial summary judgment, claiming that all but one of the plaintiffs' claims were time barred by statutes of limitation and, therefore, not arbitrable. The trial court interpreted the parties' agreement and concluded that the language of the choice of law clauses had incorporated into their agreement New York Civil Practice Law and Rules § 7502 (b) (McKinney 1980), which provides in relevant part that if "the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court . . . ." Noting that, although § 7502 (b) applied, it was preferable to apply the same statutes of limitation with respect to the plaintiffs' application for an order compelling arbitration as would apply in the Connecticut legal proceedings that the plaintiffs theretofore had initiated against the defendant, the trial court determined that Connecticut's statutes of limitation, rather than New York's, should govern the plaintiffs' application for an order compelling arbitration. The parties agreed with the court's ruling. Because the Connecticut statutes of limitation time periods for contract claims and tort claims are six years and three years, respectively,[9] the trial court denied the plaintiffs' motion for summary judgment and granted summary

---

[9] See General Statutes §§ 52-576 and 52-577. The § 52-577 three year time limitation governs all of the plaintiffs' claims other than the breach of contract claims. See *Travelers Indemnity Co.* v. *Rubin*, 209 Conn. 437, 441, 551 A.2d 1220 (1988).

The New York statute of limitations time period for breach of contract claims and fraud claims is six years. See New York Civil Practice Law and Rules § 213 (2) and (8) (McKinney 1990). Although the New York statute of limitations time period for tort claims, like that of Connecticut, is three years; see New York Civil Practice Law and Rules § 214; under New York law, the § 213 (2) six year time limitation for breach of contract claims governs the plaintiffs' breach of fiduciary duty claims. See *Video Corp. of America* v. *Frederick Flatto Associates, Inc.*, 58 N.Y.2d 1026, 1028, 448 N.E.2d 1350, 462 N.Y.S.2d 439 (1983).

judgment in favor of the defendant as to all of the plaintiffs' claims, except the breach of contract claim with respect to any transactions that had been executed within the six year period immediately prior to September 21, 1993, the date on which the plaintiffs first instituted legal proceedings against the defendant. This appeal followed.

On appeal, the plaintiffs claim that the trial court improperly granted the defendant's motion for partial summary judgment. Specifically, the plaintiffs maintain that the trial court incorrectly concluded that the language of the choice of law portion of the parties' agreement had incorporated New York Civil Practice Law and Rules § 7502 (b) into that agreement, thereby improperly permitting the defendant to raise the statutes of limitation as a special defense to arbitrability in the § 52-410 court proceeding to compel arbitration.[10] The plaintiffs further claim that the trial court improperly failed to grant their motion for summary judgment. Specifically, the plaintiffs maintain that their motion for summary judgment was denied improperly because, as a matter of federal arbitration law and state contract law, the parties' agreement must be construed to provide that disputes regarding timeliness of claims are to be resolved by arbitration. The defendant disagrees and also maintains that, even if we decide that the parties' agreement did not permit the defendant to raise the statutes of limitation as a special defense to arbitrability in a court proceeding to compel arbitration, the plaintiffs' motion should not be granted in all respects. The

---

[10] Because we conclude that the parties' agreement did not permit the defendant to raise statutes of limitation as a special defense to arbitrability in the court proceeding, we do not reach the plaintiffs' alternate arguments that the defendant had waived that special defense and that the plaintiffs' claims, having been based not on individual transactions that took place prior to September 21, 1987, but on the contractual relationships that existed between the defendant and the plaintiffs until the funds were transferred to PaineWebber, were not time barred by statutes of limitation.

defendant maintains that there is a genuine issue of material fact as to whether one plaintiff, Yeshiva University, has standing to compel arbitration, and that, consequently, the plaintiffs' motion for summary judgment was properly denied as to Yeshiva University's claims.

"The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Maffucci* v. *Royal Park Ltd. Partnership*, 243 Conn. 552, 554, 707 A.2d 15 (1998); *Bruttomesso* v. *Northeastern Connecticut Sexual Assault Crisis Services, Inc.*, 242 Conn. 1, 5–6, 698 A.2d 795 (1997); see Practice Book § 384, now Practice Book (1998 Rev.) § 17-49.

I

## THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiffs argue that the trial court incorrectly concluded that the parties' agreement incorporated New York Civil Practice Law and Rules § 7502 (b), thereby improperly permitting the defendant to interpose the statutes of limitation as a special defense to arbitrability in the court proceeding to compel arbitration.[11] Specifically, the plaintiffs maintain that because the language of the parties' agreement is ambiguous as to whether the choice of law portion was intended to

---

[11] New York Civil Practice Law and Rules § 7502 (b) (McKinney 1980) provides in relevant part: "[If] the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court . . . ."

limit the scope of the arbitration portion, as a matter of federal arbitration law and state contract law, the parties' agreement must be construed to provide that disputes regarding timeliness of claims are to be decided by arbitrators, and, consequently, that the trial court improperly rendered summary judgment for the defendant. We agree.

## A

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (Internal quotation marks omitted.) *PaineWebber, Inc.* v. *Bybyk,* 81 F.3d 1193, 1198 (2d Cir. 1996); see *Smith Barney, Harris Upham & Co.* v. *Luckie,* 85 N.Y.2d 193, 201, 647 N.E.2d 1308, 623 N.Y.S.2d 800, cert. denied sub nom. *Manhard* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 516 U.S. 811, 116 S. Ct. 59, 133 L. Ed. 2d 23 (1995); see also *AT&T Technologies, Inc.* v. *Communications Workers of America,* 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986); accord *A. Dubreuil & Sons, Inc.* v. *Lisbon,* 215 Conn. 604, 608, 577 A.2d 709 (1990).[12] "Arbitration is essentially a creature of contract, a contract in which the parties themselves charter a private tribunal for the resolution of their disputes." *In the Matter of Astoria Medical Group & Health Ins. Plan of Greater New York,* 11 N.Y.2d 128, 132–33, 182 N.E.2d 85, 227 N.Y.S.2d 401 (1962); see *Schlaifer* v. *Sedlow,* 51 N.Y.2d 181, 185, 412 N.E.2d 1294, 433 N.Y.S.2d 67 (1980); *In the Matter of Arbitration between HRH Construction Corp. & Bethlehem Steel Corp.,* 45 N.Y.2d 675, 682, 384 N.E.2d 1289, 412 N.Y.S.2d 366 (1978); see also *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland*

---

[12] The choice of law portion of the parties' agreement provides that the contracts that governed the Advest accounts are to be construed in accordance with New York law. Consequently, we have included citations to both New York contract law and federal arbitration law. In addition, because the parties have cited Connecticut law as well as New York law, we also have included citations to Connecticut contract law.

*Stanford Junior University,* 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); accord *A. Dubreuil & Sons, Inc.* v. *Lisbon,* supra, 608; *John A. Errichetti Associates* v. *Boutin,* 183 Conn. 481, 488, 439 A.2d 416 (1981). "Arbitration agreements are contracts and their meaning is to be determined . . . under accepted rules of [state] contract law . . . ." (Citations omitted.) *Cowen & Co.* v. *Anderson,* 76 N.Y.2d 318, 321, 558 N.E.2d 27, 559 N.Y.S.2d 225 (1990); see *Salvano* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 85 N.Y.2d 173, 182, 647 N.E.2d 1298, 623 N.Y.S.2d 790 (1995); see also *First Options of Chicago, Inc.* v. *Kaplan,* 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *Mastrobuono* v. *Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62–63, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995); accord *A. Dubreuil & Sons, Inc.* v. *Lisbon,* supra, 610.

A brief overview of relevant principles of contract law is, therefore, helpful. The intention of the parties to a contract governs the determination of the parties' rights and obligations under the contract. *Mallad Construction Corp.* v. *County Federal Savings & Loan Assn.,* 32 N.Y.2d 285, 291, 298 N.E.2d 96, 344 N.Y.S.2d 925 (1973); see *Frye* v. *Brown,* 189 App. Div. 2d 1031, 1033, 592 N.Y.S.2d 527 (1993); *American Express Bank Ltd.* v. *Uniroyal, Inc.,* 164 App. Div. 2d 275, 277, 562 N.Y.S.2d 613 (1990), appeal denied, 77 N.Y.2d 807, 572 N.E.2d 52, 569 N.Y.S.2d 611 (1991); accord *Barnard* v. *Barnard,* 214 Conn. 99, 109, 570 A.2d 690 (1990); *Hatcho Corp.* v. *Della Pietra,* 195 Conn. 18, 20, 485 A.2d 1285 (1985); *Sturman* v. *Socha,* 191 Conn. 1, 10, 463 A.2d 527 (1983). Analysis of the contract focuses on the intention of the parties as derived from the language employed. *Slatt* v. *Slatt,* 64 N.Y.2d 966, 967, 477 N.E.2d 1099, 488 N.Y.S.2d 645 (1985); *Mallad Construction*

*Corp.* v. *County Federal Savings & Loan Assn.*, supra, 291; accord *Levine* v. *Massey*, 232 Conn. 272, 278, 654 A.2d 737 (1995); *Barnard* v. *Barnard*, supra, 110; *Sturman* v. *Socha*, supra, 10.

Where the intention of the parties is clearly and unambiguously set forth, effect must be given to that intent. *Slatt* v. *Slatt*, supra, 64 N.Y.2d 967; *West, Weir & Bartel, Inc.* v. *Mary Carter Paint Co.*, 25 N.Y.2d 535, 540, 255 N.E.2d 709, 307 N.Y.S.2d 449 (1969), amended on other grounds, 26 N.Y.2d 969, 259 N.E.2d 483, 311 N.Y.S.2d 13 (1970); accord *Lawson* v. *Whitey's Frame Shop*, 241 Conn. 678, 686, 697 A.2d 1137 (1997); *Levine* v. *Massey*, supra, 232 Conn. 278–79. Contract language is unambiguous when it has a "definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . ." (Citations omitted.) *Breed* v. *Ins. Co. of North America*, 46 N.Y.2d 351, 355, 355 N.E.2d 1280, 413 N.Y.S.2d 352 (1978); see *Chimart Associates* v. *Paul*, 66 N.Y.2d 570, 573, 489 N.E.2d 231, 498 N.Y.S.2d 344 (1986) (proper inquiry in determining whether contract is ambiguous is whether agreement on its face is reasonably susceptible of more than one interpretation); accord *Levine* v. *Massey*, supra, 279; *Zullo* v. *Smith*, 179 Conn. 596, 601, 427 A.2d 409 (1980) (same) (" 'court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity' "). The rules of construction are applied only if the language of the contract is ambiguous, uncertain or susceptible of more than one construction. *Breed* v. *Ins. Co. of North America*, supra, 355; *Gans* v. *Aetna Life Ins. Co. of Hartford, Connecticut*, 214 N.Y. 326, 330, 108 N.E. 443 (1915); accord *Levine* v. *Massey*, supra, 278; *Gino's Pizza of East Hartford, Inc.* v. *Kaplan*, 193 Conn. 135, 138–39, 475 A.2d 305 (1984). Moreover, if the intention of the parties is to be determined without reference to extrinsic evidence, interpretation of the contract is a question of law. *Mallad*

*Construction Corp.* v. *County Federal Savings & Loan Assn.*, supra, 32 N.Y.2d 291; *American Express Bank Ltd.* v. *Uniroyal, Inc.*, supra, 164 App. Div. 2d 277; accord *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53–54, 607 A.2d 424 (1992).

## B

Judicial construction of an arbitration agreement, however, is not guided solely by the principles of relevant state contract law. The arbitration act; 9 U.S.C. §§ 1 through 16; governs written arbitration agreements that pertain to contracts involving interstate commerce.[13] 9 U.S.C. §§ 1 and 2. The arbitration act creates a "body of federal *substantive law* of arbitrability, applicable to any arbitration agreement within the coverage of the [a]ct . . . ." (Citation omitted; emphasis added; internal quotation marks omitted.) *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University*, supra, 489 U.S. 475; *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). As federal *substantive* law; *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, supra, 24; the arbitration act is to be applied by state courts as well as by federal courts. *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U.S. 265, 271–72, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995); *Southland Corp.* v. *Keating*, 465 U.S. 1, 15–16, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984); see *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University*, supra, 476 (arbitration act requires state court, in applying general state law principles of contract interpretation, to give due regard to federal policy favoring arbitration).

The purpose of the arbitration act is to ensure " 'that private agreements to arbitrate are enforced according

---

[13] The trial court found that the parties' agreement was a written contract involving interstate commerce. That finding is not disputed by the parties.

to their terms.'" *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, supra, 514 U.S. 53–54; *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University*, supra, 489 U.S. 479. The arbitration act establishes a strong federal policy favoring arbitration. *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, supra, 460 U.S. 24–25; see also *Thomas James Associates, Inc.* v. *Jameson*, 102 F.3d 60, 65 (2d Cir. 1996); *New York* v. *Oneida Indian Nation of New York*, 90 F.3d 58, 61 (2d Cir. 1996). "[W]hen Congress passed the [a]rbitration [a]ct in 1925 . . . [i]t intended courts to enforce [arbitration] agreements into which parties had entered . . . and to place such agreements upon the same footing as other contracts . . . ." (Citations omitted; internal quotation marks omitted.) *Allied-Bruce Terminix Cos.* v. *Dobson*, supra, 513 U.S. 270–71; *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University*, supra, 474; *Shearson/American Express, Inc.* v. *McMahon*, 482 U.S. 220, 225–26, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987).

Section 2 of the arbitration act provides in relevant part that "[a] written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, *and enforceable* . . . ." (Emphasis added.) 9 U.S.C. § 2. When a dispute that is covered by an arbitration agreement arises, and a party to the arbitration agreement fails, neglects or refuses to submit to arbitration, the party seeking arbitration may petition a federal or state court for an order compelling arbitration. See 9 U.S.C. § 4; General Statutes § 52-410. Section 4 of the arbitration act provides that the court shall hear the parties, and, upon being satisfied that neither the making of a covered arbitration agreement, i.e., a written arbitration agreement pertaining to a contract involving interstate commerce, nor the defendant's failure to

comply with that agreement is in dispute, the court shall issue an order directing the parties to proceed to arbitration in accordance with the terms of their arbitration agreement. 9 U.S.C. § 4; accord General Statutes § 52-410.

The arbitration act, therefore, directs state and federal courts in which an application for an order compelling arbitration has been made to determine whether: (1) the litigants executed a written arbitration agreement regarding a contract involving interstate commerce; and (2) if so, whether the issue in dispute is arbitrable, i.e., within the scope of that agreement. *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404, 87 S. Ct. 1801, 18 L. Ed. 2d 270 (1967); *PaineWebber, Inc.* v. *Bybyk*, supra, 81 F.3d 1198. In other words, having concluded that the arbitration act applies to the litigants' arbitration agreement, the court ordinarily then interprets the arbitration agreement to determine whether the issue in dispute falls within the scope of the litigants' agreement to arbitrate. *AT&T Technologies, Inc.* v. *Communications Workers of America*, supra, 475 U.S. 649; *John Wiley & Sons, Inc.* v. *Livingston*, 376 U.S. 543, 546–47, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964). Moreover, if the arbitration agreement is ambiguous as to whether the issue in dispute is arbitrable, the arbitration act requires the court to resolve the ambiguity in favor of arbitration of the issue. *First Options of Chicago, Inc.* v. *Kaplan*, supra, 514 U.S. 945; *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, supra, 460 U.S. 24–25.

In some cases, however, the arbitration act provides for more limited judicial analysis of an arbitration agreement. Parties to an arbitration agreement may provide in their agreement that the arbitrating body, rather than a court, shall interpret the arbitration agreement to determine whether the issue in dispute is within the purview of the parties' undertaking to arbitrate. *First*

*Options of Chicago, Inc.* v. *Kaplan,* supra, 514 U.S. 943; *AT&T Technologies, Inc.* v. *Communications Workers of America,* supra, 475 U.S. 649; see also *PaineWebber, Inc.* v *Bybyk,* supra, 81 F.3d 1198 (" '[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter' "). When an arbitration agreement so provides, the arbitration act requires the court, upon ascertaining that the agreement is written and pertains to a contract involving interstate commerce, to issue an order compelling arbitration without further consideration of the scope of the agreement to arbitrate. In cases in which an arbitration agreement is ambiguous as to *who,* i.e., the arbitrating body or the court, is to interpret the arbitration agreement to determine whether the agreement provides for arbitration of the issue in dispute, however, the court, not the arbitrating body, initially interprets the arbitration agreement to make that determination. *First Options of Chicago, Inc.* v. *Kaplan,* supra, 944; *PaineWebber, Inc.* v. *Bybyk,* supra, 1198–99.

C

In this case, none of the parties claims that the parties' agreement explicitly provided that an arbitrating body, not a court, must interpret their agreement to determine whether timeliness is an arbitrable issue. With the above relevant principles of federal arbitration law and state contract law in mind, therefore, we turn our attention to the language of the parties' agreement.

There are two possible interpretations of the language of the parties' agreement. The first is that the language of the choice of law portion of the agreement encompasses New York arbitration law. Under this construction, which was adopted by the trial court and is advocated by the defendant, New York arbitration law,

specifically New York Civil Practice Law and Rules § 7502 (b) (party may assert statute of limitations as bar to order compelling arbitration), operates as a limitation on the parties' agreement, memorialized in the arbitration provision, that, "except as inconsistent with [federal securities law], *all controversies* . . . shall be determined by arbitration . . . ." (Emphasis added.) Consequently, under this interpretation, although it is undisputed that arbitration of a controversy regarding timeliness of a claim would not be inconsistent with federal securities law, such a controversy is not necessarily arbitrable. Instead, if the defendant so desires, the timeliness of the plaintiffs' claims must be determined by the court in accordance with the relevant statutes of limitation.

The second possible interpretation of the language of the parties' agreement is that the choice of law portion does not limit the arbitration portion. Under this construction, which is espoused by the plaintiffs, despite the parties' agreement in the choice of law provision that "[their] [a]greement *and its enforcement* shall be governed by the laws of the State of New York"; (emphasis added); a controversy as to the timeliness of a claim is both arbitrable and governed by the timeliness rules of the arbitrating body, and the defendant does not have the option of raising a statute of limitations defense to arbitrability in a court proceeding to compel arbitration.

The defendant maintains that the language of the choice of law portion of the parties' agreement rules out, as a matter of law, the second possibility. In so arguing, the defendant relies primarily on *Smith Barney, Harris Upham & Co.* v. *Luckie*, supra, 85 N.Y.2d 202, in which the New York Court of Appeals concluded that the parties in *Luckie*, by specifying that their agreement *and its enforcement* would be governed by New York law, intended to incorporate into that

agreement New York Civil Practice Law and Rules § 7502 (b), the provision at issue in this appeal. We agree with the defendant that if the case before us involved a written arbitration agreement that contained arbitration and choice of law clauses identical to those at issue in *Luckie,* under that case, as a matter of New York contract law,[14] we would have to construe the agreement to indicate that the contracting parties intended to incorporate § 7502 (b) into their agreement. For the reasons that follow, however, we do not agree that the holding in *Luckie* is dispositive of this appeal. See *Smith Barney Shearson, Inc.* v. *Sacharow,* 91 N.Y.2d 39, 48, 689 N.E.2d 884, 666 N.Y.S.2d 990 (1997) (choice of law clause specifying that contracting parties' *agreement and its enforcement* is to be governed by New York law does not necessarily trump broad arbitration clause; "*Luckie* was narrowly tailored to the specific framework presented by that case").

We begin by noting that the choice of law portion of the parties' agreement contains the very phrase, namely, "and its enforcement," that the New York Court of Appeals found to be dispositive in *Luckie.* See *Smith Barney, Harris Upham & Co.* v. *Luckie,* supra, 85 N.Y.2d 202. Indeed, we acknowledge that, on its face, the language of the choice of law portion of the parties' agreement indicates that, like the litigants in *Luckie,* the parties intended to incorporate New York arbitration law, and therefore New York Civil Practice Law and Rules § 7502 (b), into their agreement, thereby giving the defendant the option of raising statutes of limitation as a defense to arbitrability in a court proceeding to compel arbitration.

---

[14] The New York Court of Appeals' decision in *Luckie,* however, has engendered a dispute between New York courts and a number of federal courts as to the effect of the arbitration act on the construction of contracts containing a choice of law clause specifying that the contract and its enforcement is to be governed by New York law. See, e.g., *PaineWebber, Inc.* v. *Bybyk,* supra, 81 F.3d 1198–99; *A.S. Goldmen & Co.* v. *Bochner,* United

The individual clauses of a contract, however, cannot be construed by taking them out of context and giving them an interpretation apart from the contract of which they are a part. *Barrow* v. *Lawrence United Corp.*, 146 App. Div. 2d 15, 18, 538 N.Y.S.2d 363 (1989), later proceeding, 155 App. Div. 2d 806, 548 N.Y.S.2d 82 (1989); accord *White* v. *Kampner*, 229 Conn. 465, 473–74, 641 A.2d 1381 (1994); 2 Restatement (Second), Contracts § 202 (2) (1979) (written contract is to be interpreted as whole). "A contract should be construed so as to give full meaning and effect to *all of its provisions* . . . ." (Citations omitted; emphasis added.) *American Express Bank Ltd.* v. *Uniroyal, Inc.*, supra, 164 App. Div. 2d 277; *Trump-Equitable Fifth Avenue Co.* v. *H.R.H. Construction Corp.*, 106 App. Div. 2d 242, 244, 485 N.Y.S.2d 65 (1985), aff'd, 66 N.Y.2d 779, 488 N.E.2d 115, 497 N.Y.S.2d 369 (1985); accord *Tomlinson* v. *Board of Education*, 226 Conn. 704, 722, 629 A.2d 333 (1993); *Hatcho Corp.* v. *Della Pietra*, supra, 195 Conn. 20; see also *Thomas Crimmins Contracting Co.* v. *New York*, 74 N.Y.2d 166, 172–73, 542 N.E.2d 1097, 544 N.Y.S.2d 580 (1989). Thus, the language of the choice of law portion of the parties' agreement cannot be read in isolation, but instead must be considered in light of the language of the arbitration portion. See *Smith Barney, Inc.* v. *Hause*, 238 App. Div. 2d 104, 107, 655 N.Y.S.2d 489, aff'd, 91 N.Y.2d 39, 689 N.E.2d 884, 666 N.Y.S.2d 990 (1997) (interpreting choice of law clause in conjunction with arbitration clause); *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Adler*, 234 App. Div. 2d 139–40, 651 N.Y.S.2d 38 (1996) (same); see also *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, supra, 514 U.S. 63 (same); accord *White* v. *Kampner*, supra, 473–74 (interpreting mandatory negotiation clause in conjunction with arbitration clause).

States District Court, Docket No. 96 CIV. 1285 (S.D.N.Y. July 24, 1996); *Cowen & Co.* v. *Tecnoconsult Holdings Ltd.*, United States District Court, Docket No. 96 CIV. 3748 (S.D.N.Y. July 11, 1996).

The arbitration portion of the parties' agreement provides in relevant part that *"except as inconsistent with the [federal securities law], all controversies . . .* concerning any transaction, or the construction, performance or breach of this or any other agreement . . . shall be determined by arbitration . . . ."* (Emphasis added.) The phrase "all controversies . . . concerning . . . construction, performance or breach of this . . . agreement" is not only broad enough to encompass disputes over whether the plaintiffs' claims are timely; see *Smith Barney, Inc.* v. *Hause,* supra, 238 App. Div. 106; see also *PaineWebber, Inc.* v. *Bybyk,* supra, 81 F.3d 1199; it is also unqualified by any language explicitly carving out disputes regarding eligibility for arbitration, such as timeliness, for resolution by the courts. In addition, the fact that the parties explicitly specified in the arbitration portion of their agreement that certain claims related to federal securities law were to be the only disputes excepted from their agreement to arbitrate strongly suggests that the parties intended that eligibility controversies, including timeliness, would be resolved by arbitration. The language of the arbitration portion of the parties' agreement, therefore, reasonably may be construed to indicate that if the plaintiffs' claims are untimely, the defendant's remedy is to defend the plaintiffs' *arbitration action* on timeliness grounds, rather than to avoid the arbitration altogether. See *PaineWebber, Inc.* v. *Bybyk,* supra, 1200.

Moreover, the language of the arbitration portion of the parties' agreement is not the same as that contained in the arbitration clauses of the *Luckie* contracts. Unlike the arbitration portion of the agreement in this case, the arbitration clauses of the *Luckie* contracts did not contain any language suggesting that the parties intended that the exclusion from arbitration of disputes related to federal securities law would be *the only exception* to the scope of the *Luckie* arbitration clause.

See *Smith Barney, Harris Upham & Co.* v. *Luckie,* supra, 85 N.Y.2d 198; *Luckie* v. *Smith Barney, Harris Upham & Co.,* 999 F.2d 509, 510 (11th Cir. 1993); *Luckie* v. *Smith Barney, Harris Upham & Co.,* 766 F. Sup. 1116, 1119 (M.D. Fla. 1991). Consequently, we conclude that the language of the arbitration portion of the parties' agreement creates an ambiguity, not present in the *Luckie* contracts, as to whether the parties intended the choice of law portion of the agreement to incorporate New York Civil Practice Law and Rules § 7502 (b) into that agreement and thereby permit the defendant to raise statutes of limitation as a defense to arbitrability in a court proceeding to compel arbitration.

Furthermore, the arbitration act requires that due regard must be given to the federal policy favoring arbitration, and that in interpreting the parties' agreement, we must resolve any ambiguity regarding whether an issue in dispute is within the scope of their agreement to arbitrate in favor of arbitration. *Mastrobuono* v. *Shearson Lehman Hutton, Inc.,* supra, 514 U.S. 62; *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University,* supra, 489 U.S. 476; *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.,* supra, 460 U.S. 24–25; *Thomas James Associates, Inc.* v. *Jameson,* supra, 102 F.3d 65; see also *White* v. *Kampner,* supra, 229 Conn. 473–74; *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Adler,* supra, 234 App. Div. 140. We conclude, therefore, that, as a matter of federal arbitration law, the parties' agreement must be construed to indicate that controversies as to the timeliness of claims are to be resolved by arbitrators.

Finally, we note that our conclusion that the parties' agreement must be construed in favor of arbitration of disputes regarding timeliness is consistent with the common-law principle that ambiguous contractual language should be construed against the interest of the

party that drafted it. See *Graff* v. *Billet*, 64 N.Y.2d 899, 902, 487 N.E.2d 212, 487 N.Y.S.2d 733 (1985) (any doubt as to meaning of language of brokerage agreement must be resolved against broker who prepared agreement); accord *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 375, 593 A.2d 498 (1991); see also *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, supra, 514 U.S. 62; 2 Restatement (Second), supra, Contracts § 206. The plaintiffs did not draft, edit or alter the parties' agreement, and consequently, to the extent that the defendant drafted ambiguous contracts, it cannot now claim the benefit of the doubt regarding the ambiguity. See *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, supra, 63; *PaineWebber, Inc.* v. *Bybyk*, supra, 81 F.3d 1199.

We conclude that the parties' agreement did not permit the defendant to raise statutes of limitation as a defense to arbitrability in a court proceeding to compel arbitration. The defendant's motion for partial summary judgment, therefore, was granted improperly.

## II

### THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

We note at the outset that a trial court's ruling denying a party summary judgment is not a final judgment, and that such rulings ordinarily are not appealable. See Practice Book § 4000, now Practice Book (1998 Rev.) § 61-1. We previously have held, however, that a party may obtain review of a trial court's ruling denying summary judgment in the context of an appeal from a subsequent final judgment. *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 295 n.12, 596 A.2d 414 (1991). The plaintiffs are before this court on appeal from a final judgment rendered in favor of the defendant on a motion for summary judgment. Consequently, the claim

of the plaintiffs that the trial court improperly denied their motion for summary judgment is reviewable.

The plaintiffs claim that they were entitled, as matter of law, to an order directing the defendant to proceed with arbitration and that, consequently, the trial court improperly denied their motion for summary judgment. The defendant, however, maintains that the plaintiffs are not entitled to such an order because: (1) the plaintiffs' claims are time barred by statutes of limitation and, therefore, not arbitrable; and (2) there is a genuine issue of material fact as to whether one plaintiff, Yeshiva University, has standing to compel the defendant to proceed with arbitration. Because we have concluded that the parties' agreement did not permit the defendant to raise statutes of limitation as a special defense to arbitrability in the § 52-410 court proceeding, and because there is no dispute as to whether the plaintiffs, other than Yeshiva University, have standing to compel arbitration of claims arising from their respective accounts, we conclude that the trial court improperly determined that those plaintiffs, concerning whom there was no question of standing, were not entitled, as a matter of law, to an order compelling arbitration.

We turn now to the defendant's claim that Yeshiva University was not entitled to an order compelling arbitration. The defendant maintains that because Yeshiva University was not a signatory to any of the contracts that governed the Advest accounts, there is a genuine issue of material fact as to whether Yeshiva University has standing to compel the defendant to proceed with arbitration.[15] To support their position that Yeshiva University has standing to compel the defendant to proceed

[15] The defendant contends that Yeshiva University lacks standing to compel arbitration of claims related to the Yeshiva University-Levine Trust account and the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund account. Because there is no dispute as to whether Berman, trustee of the Yeshiva University-Levine Trust, has standing to compel arbitration of claims regarding the Yeshiva University-Levine Trust account and because

with arbitration, the plaintiffs rely on the following undisputed evidence: (1) the written agreement by which the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund was established in 1979; (2) the affidavit of Sheldon E. Socol, vice president of business affairs for Yeshiva University; (3) a client account statement prepared in 1979 by Shearson Hayden Stone, Inc., for the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund; and (4) an annual statement prepared in 1987 by the defendant for the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund account. The written agreement by which the scholarship fund was established provides that contributions by check to the fund shall be made payable to Yeshiva University and shall be deposited to an account specifically designated as the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund. The agreement further provides that Yeshiva University shall "hold, manage, invest and reinvest the funds received in perpetuity, and shall collect the income therefrom, and . . . award the said income as scholarships . . . ." The agreement, which is dated June 12, 1979, was signed by Norman Lamm, president of Yeshiva University, and was duly notarized. Socol's affidavit states that Yeshiva University vested Gabriel Levine with the responsibility of investing the assets held in the scholarship fund, and the 1979 client statement prepared by Shearson Hayden Stone, Inc., was addressed to Gabriel Levine A/C Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund. Moreover, the statement that the defendant itself prepared for the scholarship fund account in 1987 was addressed to Socol, and both the 1979 Shearson

the plaintiffs' brief addresses only the question of whether Yeshiva University has standing to compel arbitration of claims related to the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund account, we do not consider whether Yeshiva University has standing, as an intended beneficiary, to compel arbitration of claims related to the Yeshiva University-Levine Trust account.

Hayden Stone, Inc., statement and the 1987 Advest statement listed Yeshiva University's tax identification number as the account holder's tax identification number.

Those uncontroverted facts are sufficient to establish that when Gabriel Levine executed the contracts governing the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund account, he did so not in his individual capacity, but on behalf of Yeshiva University.[16] The defendant nevertheless argues that Yeshiva University was neither the owner nor an intended beneficiary of the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund account. To support its position, the defendant relies entirely on the affidavit of Daniel F. McAuliffe, director of compliance for Advest, Inc. In his affidavit, McAuliffe states that for purposes of the defendant's "obligations under New York Stock Exchange Rule 405, often called 'the know your customer rule,' " the defendant treated Gabriel Levine as its customer with respect to the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund account.

"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . it [is nevertheless] incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Citations omitted; internal quotation marks omitted.) *Wadia Enterprises, Inc.* v. *Hirschfeld,* 224 Conn. 240,

---

[16] The three elements required to show the existence of an agency relationship are: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. *Hallas* v. *Boehmke & Dobosz, Inc.,* 239 Conn. 658, 673, 686 A.2d 491 (1997); *Gateway Co.* v. *DiNoia,* 232 Conn. 223, 240, 654 A.2d 342 (1995); *Brilliant* v. *Raidy,* 189 Misc. 561, 563, 70 N.Y.S.2d 126 (1947); see also 1 Restatement (Second), Agency § 1 (1958).

247, 618 A.2d 506 (1992); *Connell* v. *Colwell*, 214 Conn. 242, 251, 571 A.2d 116 (1990). The mere presence of an adverse claim will not in itself defeat the motion. *Wadia Enterprises, Inc.* v. *Hirschfeld*, supra, 247; *Farrell* v. *Farrell*, 182 Conn. 34, 39, 438 A.2d 415 (1980).

The defendant did not furnish any affidavits or documents establishing a factual dispute concerning the ownership of the assets held in the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund account. An assertion that the defendant treated Gabriel Levine as its customer for purposes of "the 'know your customer rule' " does not create an issue of material fact as to whether Gabriel Levine was acting on behalf of Yeshiva University when he executed the contracts governing the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund account. The defendant consequently failed to establish the factual predicate necessary for a determination of the existence of a genuine issue of material fact as to whether Yeshiva University had standing to compel arbitration of claims related to the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund.

To summarize, we conclude that the language of the arbitration portion of the parties' agreement created an ambiguity as to whether the parties intended that disputes regarding timeliness of claims arising under the contracts that governed the Advest accounts would be resolved by arbitration, and that, consequently, as a matter of federal arbitration law; see *First Options of Chicago, Inc.* v. *Kaplan*, supra, 514 U.S. 945; *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, supra, 460 U.S. 24–25; and New York contract law; see *Graff* v. *Billet*, supra, 64 N.Y.2d 902; that ambiguity must be resolved in favor of arbitration of such disputes. We also conclude that Yeshiva University did not lack standing to compel arbitration of claims arising

under the contract that governed the Yeshiva University-Gabriel and Anna V. Levine Scholarship Fund account, and that the arbitration act consequently entitled the plaintiffs to an order directing the defendant to proceed with arbitration of all claims the plaintiffs raised regarding the Advest accounts. The plaintiffs' motion for summary judgment, therefore, should have been granted.

The judgment is reversed and the case is remanded with direction to render judgment granting the plaintiffs' motion for summary judgment and denying the defendant's motion for summary judgment.

In this opinion the other justices concurred.