[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
 Factual Background
The following facts are undisputed. The plaintiff, Thomas Mahon, was employed by the defendant, Research Publications, Inc., d/b/a Primary Source Media, as its Chief Financial Officer. On March 11, 1996, the parties entered into a written employment CT Page 13816 severance agreement. (Defendant's Exhibit A.) The severance agreement provides in relevant part: "Six (6) months severance will be paid from your agreed date of departure of April 2, 1996, through October 4, 1996, at your current salary, less applicable withholdings. Additionally, if you have not secured employment by October 4, 1996, but have used your best efforts to do so, commencing October 4, 1996, or until such time as you do secure other employment, or until April 4, 1997, whichever comes first, you will continue to be paid, as aforesaid." The agreement further provides: "You will be provided out placement support by Right Associates . . . It is understood that the 12-month program duration of Right Associates service will commence from April 3, 1996, to April 3, 1997."
From April 2, 1996, to December 30, 1996, the plaintiff was not employed. During this time, the plaintiff received $1,877.89 per week in severance pay from the defendant, with the exception of one weekly pay period of October 21, 1996, to October 25, 1996.
On December 16, 1996, SCP Communications extended an offer of full-time employment to the plaintiff. The plaintiff accepted the offer and began employment on December 30, 1996, as the Director of Financial Analysis and Planning at an annual salary of $75,000 plus eligibility for bonuses.
The plaintiff did not notify the defendant of the commencement of his employment with SCP Communications. The plaintiff continued to accept severance payments from the defendant from December 30, 1996, to January 31, 1997.
On February 3, 1997, the defendant's Chief Financial Officer, Peter Stelling, wrote a letter (Defendant's Exhibit C) to the plaintiff stating in relevant part: "We have been informed by Right Associates that you are no longer using the career counseling services available to you. Our assumption is that you have now found alternative employment, and, therefore, under the terms of your severance agreement with this Company, we will cease to continue paying you with immediate effect." The letter further stated: "If our assumption is incorrect, please provide documentary evidence of your continued state of unemployment . . . [and] we will continue payments, per your severance letter."
By letter dated February 5, 1997, (Defendant's Exhibit D) the CT Page 13817 plaintiff responded to the defendant: "This letter is to inform you that I have not yet secured employment, and that I am still utilizing my best efforts in this pursuit. Thus, in accordance with the severance package . . . immediately reinstate all benefits due and payable to me."
The defendant did not reinstate the severance payments to the plaintiff. As a result, on September 3, 1997, the plaintiff filed a two-count complaint against the defendant alleging a breach of the severance agreement. Count one alleges that the defendant breached the severance agreement by failing to pay $1,877.89 during the week of October 21, 1996, to October 25, 1996. Count two alleges that the defendant breached the severance agreement by failing to continue severance payments from January 31, 1997, to April 4, 1997.
The defendant filed an amended answer and six-count counterclaim. Count one alleges that the plaintiff breached the severance agreement by continuing to accept payments after December 30, 1996, even though the plaintiff had obtained and begun full-time employment with SCP Communications. Counts two, three, four, five, and six allege, respectively, intentional misrepresentation, negligent misrepresentation, breach of the covenant of good faith and fair dealing, abuse of process, and fraud.
Presently before the court is the defendant's motion for summary judgment as to both counts of the complaint and count one of its counterclaim. The defendant claims that no genuine issue of any material fact exists as to the plaintiff's breach of the severance agreement, and its nonbreach of the same, such that the defendant is entitled to judgment as a matter of law.
The plaintiff opposes the defendant's motion for summary judgment, arguing that genuine issues of material fact exist as to the parties' intent concerning when severance payments were to be terminated because the term "secured" as used in the phrase "if you have not secured employment" is ambiguous. (Plaintiff's Memorandum, p. 2.) The essence of the plaintiff's argument is that, while the defendant contends that "secured employment" means employment that is acquired or obtained (Defendant's Memorandum, p. 6), the plaintiff contends that "secured employment" is employment that is not of a temporary or probationary nature. (Plaintiff's Memorandum, pp. 2-3.) The plaintiff submits an affidavit in which he attests that he was CT Page 13818 hired at SCP Communications on a "probationary status," (Affidavit of Mahon, ¶ 6), and concludes that he therefore had not "secured" employment. The plaintiff asserts that his interpretation of "secured" is reasonable and should prevail over the defendant's based upon the well-established rule that an ambiguity is to be construed against the drafter, which, in this case, was the defendant. (Plaintiff's Memorandum, pp. 3, 6.)
 LEGAL DISCUSSION
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Maffucci v. Royal Park Ltd.Partnership, 243 Conn. 552, 554, 707 A.2d 15 (1998). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of a case . . ." (Citation omitted; internal quotation marks omitted.) Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990).
"A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction . . ." SoutheasternConnecticut Regional Resources Recovery Authority v. Departmentof Public Utility Control, 244 Conn. 283, 291, 709 A.2d 549
(1998). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citations omitted; internal quotation marks omitted.) Id., 290.
In determining whether "secured employment" is ambiguous, "the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract . . ." (Emphasis added; internal quotation marks omitted.) Lawson v. Whitey's Frame Shop,241 Conn. 678, 686, 697 A.2d 1137 (1997). "Contract language is unambiguous when it has a definite and precise meaning. . . concerning which there is no reasonable basis for a difference of opinion . . ." (Citation omitted; internal quotation marks CT Page 13819 omitted.) Levine v. Advest, Inc., 244 Conn. 732, 746,714 A.2d 649 (1998). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) Barnardv. Barnard, 214 Conn. 99, 110, 570 A.2d 690 (1990). "Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms . . ." (Internal quotation marks omitted.) Pesino v. Atlantic Bank of New York, 244 Conn. 85, 91,709 A.2d 540 (1998). An ambiguity will be found to exist only where the language is susceptible to two or more reasonable interpretations. Levine v. Advest, Inc., supra, 244 Conn. 746.
As an initial matter, an examination of the context in which the word "secured" appears, i.e. "if you have not secured
employment" and "until such time as you do secure other employment" reveals that it is used as a transitive verb. This observation is important because the plaintiff at several points in his memorandum uses the word "secured" as an adjective modifying employment. For example, he was "not able to obtainsecured employment," and he "was entitled to severance payments because he was subsequently employed in an unsecured position, namely a job that required [him] to endure a three month probationary period." (Emphasis added.) (Plaintiff's Memorandum, pp. 1-2.) Treating this word as an adjective rather than a transitive verb necessarily changes its meaning, however. Thus the court must focus on how the word "secured" is actually used in the context of the contract.
The defendant offers the definition of the transitive verb "secure" provided by the American Heritage Dictionary of the English Language:[1]. "1. To guard from danger or risk of loss. 2. To make film or tight; to fasten. 3. To make certain; guarantee; ensure. 4. To make a pledge on, as a loan. 5. To get possession of; acquire; procure. 6. To bring about; effect." (Defendant's Memorandum, p. 6.) The defendant relies on senses (5) and (6) to support his contention that the phrase "if you have not secured employment" means "if you have not acquired, or obtained, employment." (See Defendant's Memorandum, pp. 5-6.)
The plaintiff, on the other hand, emphasizes senses (2) and (3) to argue that "secured employment" refers to employment which CT Page 13820 is not temporary or probationary, but firm or guaranteed. (Plaintiff's Memorandum, pp. 2-3, 5-6.) The plaintiff invites the court to take judicial notice of the fact that "dictionaries number their definitions according to each definition's level of usage, with the lowest numbers being the most utilized in society."[2] (Plaintiff's Memorandum, p. 5.) The plaintiff thus concludes that his interpretation of "secured, as opposed to the defendant's, incorporates the more popularized meaning of the word. (Plaintiff's Memorandum, pp. 5-6.)
A glance at any dictionary's guide tells the user how senses of a word are arranged within a definition. For example, the "Guide to the Dictionary" contained in the American Heritage Dictionary (Second College Edition 1982), provides: "ORDER OF DEFINITIONS When a word has more than one sense, those senses are arranged in such a way that a complex word can to some extent be perceived as a structured unit. Senses are not arrangedhistorically or by frequency of use. Rather, they are ordered analytically, according to central meaning clusters from which related subsenses and additional separate senses may evolve. Such a meaningful order is considered to be the most useful presentation for the general reader." (Emphasis added.) The guide in Webster's Third New International Dictionary of the English Language Unabridged (1961), provides: "The system of separating by numbers and letters reflects something of the semantic relationship between various senses of a word. It is only a lexical convenience. It does not evaluate senses or establish anenduring hierarchy of importance among them. The best sense is theone that most aptly fits the context of an actual genuineutterance. "(Emphasis added.) Thus, it is questionable that dictionaries as a general rule number senses within a definition according to frequency of use.[3]
Moreover, determining which sense of the word is most utilized does not resolve the issue. It defies common sense to insist on a particular definition simply because it is the one most often used. This simply means that the context of that usage may more frequently occur. If a meaning of a word is inconsistent with how the word is commonly used in a particular context, it is not appropriate to apply it. Our Supreme Court consistently takes this approach when relying on dictionary definitions to interpret contract or statutory language. See Spero v. Zoning Board ofAppeals, 217 Conn. 435, 441-42, 586 A.2d 590 (1991); Aetna Life Casualty Co. v. Bulaong, 218 Conn. 51, 62, 588 A.2d 138 (1991);Streitweiser v. Middlesex Mutual Assurance Co., 219 Conn. 371, CT Page 13821 376, 593 A.2d 498 (1991).
The severance agreement uses the phrase "secured employment" in two sentences: "if you have not secured employment" and "until such time as you do secure other employment." In each, the form of the verb "secure" occurs in relation to the subject "you," referring to the plaintiff, implying an action that must be within the power or capability of the plaintiff to do. Additionally, the clause "if you have not secured employment" is followed by "but have used your best efforts to do so," which reinforces this interpretation.
The definitions emphasized by the plaintiff, senses (2) and (3), do not reflect a reasonable interpretation of the word "secure" as used in this context. As any employee knows, it is commonly and ordinarily not within his or her power or capability "to make certain" or "guarantee" his or her own employment. Additionally, it is simply unnatural and not common parlance to speak of a person making employment "firm or tight" or "fastening" employment.
It is, however, quite common and ordinary to speak of a person "acquiring" employment or "procuring" employment. When "secure" is given this meaning and used in this context, it is apparent that to "acquire" or "procure" employment is an action well within the power or capability of the plaintiff to perform. Thus, in common parlance, to "secure" employment means to "obtain" employment.[4] To import ambiguity by accepting the plaintiff's unreasonable interpretation would torture the common, ordinary, and natural meaning of the word as used in this context.
The meaning of the word "secured" as used by the parties in the severance agreement has a definite and precise meaning. Therefore, no genuine issue of material fact exists as to the parties' intended meaning of the phrase "if you have not secured employment" and the determination of whether the plaintiff was entitled to severance payments during his "probationary" period of employment with SCP Communications is a question of law.
It is undisputed by the parties that the severance payments under the agreement were to continue beyond October 4, 1996, only "until such time as you do secure other employment." As determined above, this means that the plaintiff would no longer be entitled to payments upon obtaining employment. That the CT Page 13822 plaintiff was on "probation" for a period of time is an aspect of his employment relationship with his new employer, SCP Communications, defining the terms and conditions under which his employment could be terminated, but does not affect the plaintiff's status as being employed. It is undisputed that the plaintiff obtained employment by SCP Communications on December 30, 1996. Thus, he was not entitled to accept severance payments beyond this date. In doing so, the plaintiff breached the severance agreement, and the defendant is entitled to judgment as a matter of law as to count one of its counterclaim. Additionally the defendant did not breach the severance agreement by discontinuing payments and is therefore entitled to judgment as a matter of law as to count two of the complaint.
For the period prior to December 30, 1996, however, the parties do not dispute the fact that the plaintiff was unemployed and therefore entitled to severance payments. Count one of the complaint alleges that for the one week period of October 21, 1996, to October 25, 1996, the defendant failed to pay the amount of $1,877.89. The defendant denies this allegation in its answer, (Amended Answer, ¶ 6), but submits the affidavit of David Lucas who attests that the "Defendant did not make a payment for one week in October 1996," (Affidavit of Lucas, ¶ 6), and admits that the "Defendant did not make this one week payment" in its memorandum, (Defendant's Memorandum, p. 3 n. 1). The plaintiff attests that he did not receive a payment for this week. (See Deposition of Mahon, p. 17.) Therefore, viewing the evidence in the light most favorable to the plaintiff, the defendant has failed to sustain its burden of showing that it is entitled to judgment as a matter of law as to count one of the complaint.
 CONCLUSION
For the foregoing reasons, the defendant's motion for summary judgment (#107) is granted as to count two of the complaint and count one of its counterclaim. The motion for summary judgment is denied as to count one of the complaint as the evidence fails to show that the defendant is entitled to judgment as a matter of law.
So ordered.
Michael Hartmere, Judge CT Page 13823